NORTHERN CHIEF IRON COMPANY, Appellant, vs. HOSMER and others, Respondents.

*May 11 — June 3, 1891.*

*Partnership: Conveyance of lands by trustee: Ratification: Estoppel: Settlement: Mistake.*

1. The trustee of a partnership conveyed to defendant partnership lands, the legal title to which was in one of the partners, receiving therefor a discharge of the firm indebtedness. Afterwards another partner, with knowledge of the conveyance, began a suit against defendant to annul the deed, but before trial a settlement was had, by which the partner received from defendant a deed to a tract of land, which included a portion of the lands now in controversy, giving a mortgage for the purchase money. *Held* a ratification of the conveyance by the trustee, which estopped plaintiff from claiming that no title passed thereby.

2. Where an agreement in settlement of litigation is made by which one party is to receive deeds to one third of certain lands now in controversy, described by mistake as having been sold to the other party at an auction sale, and which were understood by the parties to have been so sold, the settlement will be given the effect intended, and will be held to cover the lands in suit.

3. A partner who receives a conveyance of lands under a decree winding up the partnership business cannot question a title held by defendant to the same lands under a receiver's deed which he had previously ratified.

APPEAL from the Circuit Court for *Milwaukee* County.

The plaintiff claims to be the legal and equitable owner of 840 acres of iron lands in Ashland county, Wisconsin, and

brings this action in equity to carry into effect a decree of the supreme court of the District of Columbia, dated July 9, 1880; also to have the alleged title or claim of title of the defendants, and all of them, adjudged void as to the plaintiff, and to compel them to release or convey their pretended titles to the plaintiff.

The defendant *Amanda S. Hosmer* claims to be the owner of the lands in controversy. The defendant *Addison A. Hosmer* is her husband; and the remaining defendants claim rights in the property under a lease from *Amanda S. Hosmer*.

The circuit judge, after the trial, filed the following findings of fact and conclusions of law:

"*First.* That Norton P. Chipman, *Addison A. Hosmer*, and Charles D. Gilmore, being partners, doing business in the city of Washington, and as such dealing in lands, land scrip, land warrants, etc., said Norton P. Chipman did, in the month of December, 1874, and the month of January, 1875, locate certain scrip for said firm in his own name upon certain lands then in Lincoln county, in the state of Wisconsin, amounting in all to eleven hundred and twenty acres, and including the lands described in the plaintiff's complaint in this action, which locations were subsequently duly confirmed by the commissioner of the land office.

"*Second.* That lands upon which scrip was so located were iron lands, and the same were located with supreme court scrip, so-called, scrip certificates '26 F,' '27 F,' '111 G,' and '112 G,' being used in the location.

"*Third.* That prior to the entry of said lands said firm had made several contracts with one Charles F. Peck, whereby said Peck agreed to pay to said firm certain sums of money to be used in part in the purchase and entry of lands, and in part for the purchase and sale of scrip for the joint interest and benefit of said firm and said Charles F. Peck. That under said contracts said Charles F. Peck was

entitled to have the title to lands purchased or entered with his funds taken in his name. That pursuant to said contracts large portions of scrip purchased in the name of said Peck were used by said firm, by locating the same on lands and effecting entries thereby. That said entries were made in part only in the name of said Charles F. Peck, part thereof being made in the name of said Charles D. Gilmore, and part thereof in the name of said Norton P. Chipman.

"*Fourth.* That said scrip certificates ' 26 F,' ' 27 F,' '111 G,' and ' 112 G,' were purchased with money furnished to said firm by said Charles F. Peck, and the same was credited to him in his accounts with the firm.

"*Fifth.* That on the 13th day of December, 1875, said Norton P. Chipman, *A. A. Hosmer*, and C. D. Gilmore entered into the agreement of that date, set out in the complaint herein, dissolving their copartnership, and that on the 5th day of February, 1877, the agreement of that date, set out in said complaint, appointing Nathaniel Wilson, of the city of Washington, trustee, was duly entered into between said parties, and that said Nathaniel Wilson accepted the trust created by said agreement, but never made a declaration of trust, and that he immediately entered upon the duties thereof.

"*Sixth.* That afterwards, in the latter part of the year 1877, and early in the year 1878, said copartnership then being indebted in upwards of fifty thousand dollars, said Wilson, as trustee, with the knowledge and assistance of said copartners, including said Charles D. Gilmore, caused to be prepared a pamphlet, advertising for sale at public auction, to take place at Chicago on the 5th day of March, 1878, a large quantity of lands, being upwards of forty thousand acres, located mostly in the state of Wisconsin and in part in the state of Minnesota. That said pamphlet contained a description of the lands so proposed to be sold,

,by sections and parts of sections. That of the lands therein described a part had been previously conveyed to said Nathaniel Wilson, so that he held the legal title thereto. That to part thereof the legal title stood in Charles F. Peck; to another part, which had been entered or located with scrip bought with the money of said Peck, but located in the name of said Charles D. Gilmore, the legal title stood in said Gilmore; and to another part, also entered or located with scrip purchased for said Charles F. Peck, but located in the name of said Norton P. Chipman, the legal title stood in said Chipman.

. "*Seventh.* That the list of lands so advertised to be sold included a description of the lands described in the complaint in this action, by proper designation of sections and parts of sections. That said pamphlet so advertising said lands to be sold was extensively circulated prior to said 5th day of March, 1878, with the knowledge and consent of said Charles D. Gilmore; and that prior to said 5th day of March, 1878, said Charles F. Peck gave to said Nathaniel Wilson his written consent to the sale, pursuant to such advertisement, of all the lands therein described in which he was interested. That in said pamphlet the lands from which the timber had been cut were marked with a star, so as to designate the same.

"*Eighth.* That an auction was had at the place designated in said pamphlet, on the 5th day of March, 1878, at which sale said Nathaniel Wilson, said Norton P. Chipman, and said *A. A. Hosmer* were present, but said Charles D. Gilmore was not present; that the lands described and claimed in the complaint in this action were not offered for sale nor bid off at said auction, and that the lands then and there offered were bid in in the name of the defendant, *Amanda S. Hosmer*, at ten cents an acre for such of the same from which the timber had been cut, and one dollar and twenty-five cents an acre for the others, except those

situated in the state of Minnesota, which were bid in at three dollars an acre. That afterwards, on the 12th day of March, 1878, said Nathaniel Wilson executed to said *Amanda S. Hosmer* deeds of conveyance of all the lands described in said pamphlet, except eleven items in which the firm seem to have had no interest, and including also two items of forty acres which are not described in said pamphlet. For the lands so conveyed *Amanda S. Hosmer* paid to said Wilson the sum of $52,692.19. The total acreage conveyed was 2,358.59 acres, marked in said pamphlet as cut lands, for which ten cents per acre was paid; 1,514.94 acres of land in Minnesota, for which three dollars per acre was paid; and 38,324.76 acres of other lands, for which one dollar and twenty-five cents per acre was paid. One of the deeds of conveyance so made by Wilson covered all the lands in which said Charles F. Peck had, or was supposed to have, an interest, and said deed contained the lands described in the complaint in this action. The price paid by *Amanda S. Hosmer* included payment at the rate of one dollar and twenty-five cents per acre for the lands described in the complaint in this action.

" *Ninth.* That, prior to said 5th day of March, 1878, the interest of said Charles F. Peck in and to said lands, as well as all other claims he had against said firm, had been liquidated at a specific sum, by agreement between himself and the members of said firm, and that said *Amanda S. Hosmer*, as part payment of the consideration for the lands conveyed to her as aforesaid, assumed payment of the claims of said Peck so liquidated, which amounted to about twenty-eight thousand dollars, and procured receipts for the same, and delivered the same to said Wilson, trustee; but that said Peck in said receipts reserved the right to have conveyed to himself the legal title to all lands purchased or entered with his funds.

" *Tenth.* " That on the 12th day of March, 1878, said Charles D. Gilmore filed his bill of complaint in the supreme court of the District of Columbia against said Norton P. Chipman, *A. A. Hosmer*, and Nathaniel Wilson, seeking to restrain and prevent the consummation of any sale or conveyance pursuant to said auction at Chicago. That on March 30, 1878, said bill was amended by alleging that said *Amanda S. Hosmer* pretended to be the purchaser of said lands, and praying that she be adjudged a trustee of the same, and she was made a party to the suit, and restrained, until further order of the court, from conveying said lands or any part thereof.

" *Eleventh.* That prior to the 13th day of April, 1878, said Charles D. Gilmore became informed of the deeds of conveyance by said Nathaniel Wilson to said *Amanda S. Hosmer*, as aforesaid, and of the consideration paid therefor by her as aforesaid, and that on that day, for the purpose of settling the controversy then pending between said Charles D. Gilmore and said *Amanda S. Hosmer*, the memorandum of agreement dated the 13th of April, 1878, and set out in the defendants' answer in this case, was entered into between said Gilmore and said *Amanda S. Hosmer*. That in pursuance of said agreement three lists were made of all the lands conveyed by said Nathaniel Wilson to said *Amanda S. Hosmer*, as aforesaid, each of said lists containing one third of the iron lands described in the plaintiff's complaint herein. That said Gilmore selected one of said three lists. That said *Amanda S. Hosmer*, by deed of conveyance dated April 13, 1878, conveyed to said Charles D. Gilmore all the lands described in such list, being one third of the lands conveyed to her by said Wilson, as aforesaid, for which said Gilmore agreed to pay her one third of the price paid by her to said Wilson, and that said Gilmore executed and gave to said *Amanda S. Hosmer* his notes for such one third of said price, and a mortgage of the lands so

conveyed to him by her, to secure the same, and that said transaction was intended to be a settlement between said Gilmore and said *Amanda S. Hosmer* as to all lands theretofore conveyed by said Wilson to said *Amanda S. Hosmer.*

" *Twelfth.* That thereafter, on the 4th day of May, 1878, an order was entered in said suit in the District of Columbia, by consent of parties, dismissing the same as against said *Amanda S. Hosmer,* and appointing said Nathaniel Wilson receiver of the remaining copartnership assets, without giving security. That thereafter, on the 11th day of May, 1878, said Charles D. Gilmore conveyed to said Charles F. Peck such of the lands described in said pamphlet to which the title stood in the name of said Gilmore at the time of the conveyance thereof by said Wilson to said *Amanda S. Hosmer,* being 3,543.90 acres.

" *Thirteenth.* That on the 28th day of July, 1879, said Norton P. Chipman, by deed duly executed, conveyed to said Charles F. Peck 1,173.75 acres of land in Wisconsin, including the 1,120 acres of iron lands located and entered by him as hereinbefore stated. That said Chipman received from said Peck no consideration for said deed moving to himself individually. That said deed was recorded in Lincoln county, Wisconsin, on January 6, 1882, in Book 15 of Deeds, page 106; but that the record thereof is defective in not showing any witnesses to the same.

" *Fourteenth.* That on the 9th day of July, 1880, in said suit in the supreme court of the District of Columbia, then still pending between Charles D. Gilmore, plaintiff, and said *Addison A. Hosmer* and Norton P. Chipman, defendants, a decree was entered by the consent of the parties thereto, whereby, after certain payments to be made by him, all the remaining property and assets of said late firm were vested in said Charles D. Gilmore; and said Nathaniel Wilson, as receiver, was directed to convey the same to him. That said decree did not contemplate and was not intended

to convey to said Gilmore any of the lands which said Wilson had deeded to said *Amanda S. Hosmer*, as hereinbefore stated.

"*Fifteenth*. That on the 4th day of September, 1880, said Charles D. Gilmore, having paid to said Wilson, as receiver, all except about four hundred and fifty dollars of the amount required to be paid by said decree, said Wilson, as receiver, executed to said Gilmore deeds of conveyance of all the lands to which he supposed said Gilmore was entitled under said decree. That among the conveyances so executed was a deed of two hundred and eighty acres of the iron lands entered by said Chipman as hereinbefore stated, which said Chipman had conveyed to said Peck as stated, and which had not been conveyed by said Wilson to said *Amanda S. Hosmer;* and that afterwards, on or about the 22d day of September, 1880, said Charles F. Peck also conveyed such two hundred and eighty acres of said iron lands to said Gilmore. That said Wilson, as receiver, did not then convey to said Gilmore any of the lands described in the complaint in this action. That said Gilmore never claimed from said Wilson any conveyance of the lands described in the complaint in this action, or any part thereof, nor ever requested said Wilson to make a conveyance thereof to him. That afterwards, on or about the 5th day of February, 1884, said Charles D. Gilmore obtained from said Wilson, as receiver, the execution and delivery of an additional deed, under the claim and pretense that the same was to take the place of a prior deed of September 4, 1880, which conveyed the same lands, and had been lost. That said deed, dated February 5, 1884, contained a description of the lands described in the complaint; and that said Wilson, at the time of the execution thereof, did not know that it contained such lands, or any lands which he had previously, while acting as trustee, conveyed to said *Amanda S. Hosmer*.

"*Sixteenth.* That said Charles D. Gilmore made default in the payment of the mortgage given by him to said. *Amanda S. Hosmer*, as hereinbefore stated, and that she thereupon caused the same to be foreclosed by due pro-. ceedings in equity in the state of Wisconsin. That the mortgaged premises were duly sold at referee's sale, and became vested in said *Amanda S. Hosmer* through mesne conveyances; and that on or about the 20th day of December, 1881, said Charles F. Peck delivered to said defendant, *Amanda S. Hosmer*, a deed of conveyance, bearing date March 12, 1878, and acknowledged December 20, 1881, of all the lands which had been previously deeded to her by said Nathaniel Wilson, the title to which had become vested in said Charles F. Peck as hereinbefore stated, including therein the lands described in plaintiff's complaint, which said deed was duly recorded in Lincoln county, state of Wisconsin, January 6, 1882.

"*Seventeenth.* That in November, 1883, and also in February, 1884, said Charles D. Gilmore executed and delivered to Gordon H. Gile quitclaim deeds, quitclaiming, among other things, all his right, title, and interest in and to the lands described in the complaint in this action. That said Gile made no payment to said Gilmore for said last-mentioned lands included in said deed, until between the 20th and 24th days of February, 1884, when he made payment for the same. That said Gile, at the time of making said payment, had actual knowledge of the record of said deed from Norton P. Chipman to said Charles F. Peck defectively recorded in Lincoln county as hereinbefore stated. That the records of said suit in said District of Columbia, at the time of such purchase by said Gile, contained reference to and evidence of said conveyance of the lands described in the. complaint in this action to said *Amanda S. Hosmer*, sufficient to put a purchaser upon inquiry, and said Gilmore at said time had no recorded title to said

lands. That said Gile afterwards, in April, 1884, quit-claimed his interest in said lands to said plaintiff, and that the plaintiff at the time of such quitclaim had knowledge of said *Amanda S. Hosmer's* interest in said lands.

"*Eighteenth.* That Nathaniel D. Moore and David L. Quaw did not at any time have any right, title, or interest in or to the lands described in the complaint.

"Whereupon I determine, *as conclusions of law:*

"*First.* That said *Amanda S. Hosmer* acquired no title to the lands described in the complaint whatsoever by virtue of the auction sale had at Chicago, March 5, 1878.

"*Second.* That by the deeds of conveyance by said Nathaniel Wilson to her, dated March 12, 1878, hereinbefore stated, and her payment of the consideration therefor as hereinbefore stated, and the subsequent ratification thereof and acquiescence therein on the part of said Charles D. Gilmore, said *Amanda S. Hosmer* became entitled in equity to the lands described in the complaint in this action as against said Charles D. Gilmore.

"*Third.* That through the conveyance of said lands by said Norton P. Chipman to Charles F. Peck, and by said Charles F. Peck to her, as hereinbefore stated, said *Amanda S. Hosmer* became vested with the legal title to said lands, which was not subject to any equities in favor of said Gilmore.

"*Fourth.* That said Gordon H. Gile and the plaintiff in this action acquired no better title to said lands than said Charles D. Gilmore had.

"*Fifth.* That said defendants are entitled to judgment dismissing the complaint on the merits, and for costs against the plaintiff."

The agreement referred to in the fifth finding of fact, appointing Nathaniel Wilson as trustee, was as follows:

"Memorandum of an agreement made this 5th day of February, A. D. 1877, between N. P. Chipman, *A. A. Hosmer,* and C. D. Gilmore, heretofore constituting the firm of Chipman, Hosmer & Co.

Northern Chief Iron Co. vs. Hosmer and others.

"Whereas, by articles of agreement between said parties, dated December 13, 1875, the said *A. A. Hosmer* was appointed agent for the purpose of settling the affairs of said partnership and paying the debts thereof, which said agreement was extended to remain in force until the first of January, 1877.

" And whereas, the business of said partnership still remains unsettled, and there are certain assets thereof undisposed of, and certain liabilities unpaid, it is hereby agreed:

" *First.* That all the right, title, interest, and estate of the said firm of Chipman, Hosmer & Co. in and to any lands, scrip, and landed interests of any kind heretofore held for the use and benefit of said firm, in and to any lands, scrip, and other landed interests, and all assets of said firm of whatever kind, except those heretofore conveyed to the said C. D. Gilmore on the dissolution of said partnership, shall at once be conveyed by absolute deed to Nathaniel Wilson of the city of Washington, District of Columbia.

" *Second.* That the said Wilson shall hold all the interests and assets so conveyed to him as aforesaid, in trust (1) for the payment of all debts due by said firm, except such debts as were assumed and the payment thereof provided for by agreement of the dissolution of the said firm, and the transfer of its business to the said C. D. Gilmore; (2) for the division of the residue of said land, scrip, landed interests, and assets, after the payment and satisfaction of the debts due by said firm, including those due from each member of the said firm to the said firm, and to each other; including also the money due and to become due from the said Gilmore under the terms and conditions of said agreement dissolving said partnership.

" *Third.* That the said Wilson shall make a declaration of the trusts upon which he holds the said lands, scrip, and other landed interests and assets, and shall have power (1) to sell, mortgage, or hypothecate, and to deed, with or without general or special warranties, any and all of the lands, scrip, landed interests, and assets conveyed to him, upon such terms as to time, price, and conditions of sale as he may think fit to accept; (2) to incur new indebtedness, or to execute and renew evidence of indebtedness already incurred by, for, and on behalf of said firm; (3) to complete and perfect the title to lands and scrip, to pay taxes due and to become due, and all other costs and charges necessary for the preservation of the property so conveyed to him, and to pay all liens and incumbrances, and any and every sum or sums of money necessary to perfect and protect the title in and to said property; (4) to have and exercise all the powers conferred on the said *A. A. Hosmer* by the said agreement bearing date the 13th day of December, 1875, and to employ such agents, clerks, assistants, and attorneys as may be necessary to effect the settlement of the business of said partnership and the payment of its debts.

"*Fourth.* That the said Wilson shall receive as compensation for his services the sum of three hundred dollars per month, and shall be allowed a clerk, with a salary not exceeding ———— dollars per month, and also all such expenses as he shall incur in the employment of agents and attorneys in effecting the sales of said property, and in the settlement of the affairs of said partnership, subject, however, to the approval as to said expenses of two of the parties to this agreement."

The agreement referred to in the eleventh finding of fact was as follows:

"Memorandum of agreement made this 13th day of April, 1878, between *Mrs. Amanda S. Hosmer* of the one part, and Chas. D. Gilmore of the other part, both of the city of Washington, D. C. *Mrs. Hosmer* is to immediately convey to the said Chas. D. Gilmore, by good and sufficient deeds, one third of all the lands purchased by her at the sale made March 5, 1878, by Nathaniel Wilson, trustee. Upon the delivery of such deeds, the said Chas. D. Gilmore is to deliver to *Mrs. Hosmer* his four several promissory notes, bearing even date herewith, each for the sum of $4,391.01, payable, respectively, in three, six, nine, and twelve months from the date thereof, with interest at the rate of eight per cent. per annum until paid. The aggregate of said notes — *i. e.,* the sum of $17,564.06, being one third of the sum of $52,692.19, the purchase money — is to be secured by mortgage of the lands so conveyed to the said Gilmore, which shall provide that, upon default made in the payment of any of said notes, all of said notes and the indebtedness represented thereby shall become due and payable, and shall be executed simultaneously with the delivery of said deeds. For the purpose of ascertaining what lands are to be conveyed to the said Gilmore, the said *Mrs. Hosmer* shall cause said lands to be divided into three parts or lists, each containing one third of said lands so purchased as aforesaid; and the said Gilmore shall then have and exercise his election to take one of said parts or lists, and shall be entitled to an immediate conveyance of the lands contained in the list or schedule which he may have selected. It is further agreed that the said Gilmore shall have the liberty and authority to sell any of the lands so conveyed to him, and the stumpage thereof, and the proceeds of the lands and stumpage so sold shall be applied to the payment of said notes, whether due or not; provided, however, that such sales of lands or stumpage shall not be made at a less rate than will produce seventy-five cents per thousand feet on the number of estimated feet of lumber on the various subdivisions, as are designated in the pamphlet according to which said sale of March 5, 1878, was made. The title to a part of the lands known as the 'Peck Lands' being still in the said Chas. D. Gilmore, it is further agreed that, if any of said lands shall be among the lands or in the lists of lands which are to be retained by

*Mrs. Hosmer*, the said Gilmore shall at once make a proper deed therefor to *Mrs. Hosmer*, and do whatever it is requisite for him to do to complete the title to said lands in her. It is further agreed that, upon payments being made on said notes and on 'account of said indebtedness, there shall be executed by *Mrs. Hosmer* releases of the lands so mortgaged in proportion to the payments which may be made as aforesaid."

The plaintiff filed numerous exceptions to the findings of fact and conclusions of law above set forth, and appeals from the judgment dismissing the complaint. The plaintiff did not except to that part of the eighth finding of fact which found that the lands described in the complaint were not offered or bid off at the auction in Chicago, nor did it except to the first conclusion of law.

*Charles W. Felker*, attorney, and *S. U. Pinney*, of counsel, for the appellant.

For the respondents there were briefs by *Winkler, Flanders, Smith, Bottum & Vilas*, and oral argument by *F. C. Winkler*.

WINSLOW, J. The questions raised by the appellant on this appeal are purely questions of fact. If the circuit judge was right in his findings of fact, then this judgment cannot be disturbed. We cannot undertake to review the testimony bearing on the findings of fact which appellant challenges. It is very voluminous, and the merest attempt to make an abstract of the testimony would well-nigh consume a volume. Careful and thorough consideration of the record convinces us that there is no material finding which can be said to be against the preponderance of the evidence.

The important and material contentions raised by the appellant on this appeal are (1) that the conveyance of Wilson, the trustee, to *Mrs. Hosmer*, of March 12, 1878, was without consideration, fraudulent, and in fact passed no title, legal or equitable, to the lands in controversy; (2) that the agreement of settlement of April 13, 1878, be-

tween *Mrs. Hosmer* and Gilmore, did not include the lands in controversy; (3) that the equitable title passed by the decree of the supreme court of the District of Columbia of July 9, 1880, to C. D. Gilmore.

The first two contentions will be considered together. It is undoubted that these lands were partnership lands, and that the legal title was in Chipman. It may at once be conceded that Wilson, as trustee, could make no conveyance which would carry the legal title, because the lands had not been conveyed to him by Chipman; and it may also be conceded, for the sake of argument, that his conveyance would carry no equitable title, although that point is not decided. The situation then is this: Wilson had pretended to convey to *Mrs. Hosmer* the lands in suit, and received a consideration therefor by way of discharge of the firm indebtedness. This, we think, is clearly established by the evidence: Gilmore, knowing of this pretended conveyance, files his bill in equity in the supreme court of the District of Columbia, and prays to have the conveyance set aside. Before trial of that action, Gilmore and *Mrs. Hosmer* settled their differences by the agreement referred to in the eleventh finding of fact, and Gilmore received under that agreement a deed from *Mrs. Hosmer* of a large quantity of land, including one third of these very lands in controversy, which he mortgaged back to her for unpaid purchase money. It is too clear for argument that this transaction amounted to a ratification by Gilmore of the unauthorized transfer by Wilson, and prevents him from now claiming that Wilson's deed conveyed no title. But appellant contends that the agreement of settlement only refers in its terms to the lands sold at the Chicago auction, and that these lands were not sold at that auction. Granting this to be true also, it seems clear from the evidence that all the parties then understood that these lands were sold at Chicago, and intended that the agreement of set-

tlement should cover them. The fact that a part of them were included in the deed and mortgage made pursuant to the agreement of settlement would seem to be pretty conclusive evidence of the fact. This being the fact, the contract of settlement must be construed in the light of the surrounding circumstances, and, when so construed, the circuit judge was plainly right in holding that the settlement was intended to cover all the lands conveyed by Wilson to *Mrs. Hosmer.*

This disposes of the first two contentions raised by the appellant.

The third contention falls of its own weight; for when it is shown that Gilmore ratified the attempted transfer by Wilson, he cannot be heard to say, nor can his grantee with notice (and the plaintiff was properly held to be a grantee with notice) be heard to say, that the lands in suit remained partnership property and were covered by the terms of the decree of July 9, 1880. That decree only covered the remaining partnership property. Gilmore had, by ratifying Wilson's attempted conveyance, converted that deed into a good conveyance of the equitable title of the partnership in the lands, at least so far as he was concerned. The plaintiff's title then fails.

*By the Court.* — The judgment of the circuit court is affirmed.